# CHARLESTON.

## McElwain *v.* Woods *et als.*

Submitted October 21, 1919. Decided October 28, 1919.

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS—*Time for Return by Trustee on Sale of Assets:*

   The trustee of an insolvent debtor who assigns all his property in trust for the payment of his debts, has six months after making sale of the property within which to make a return to the clerk's office of his receipts and disbursements and vouchers therefor. (p. 58).

2. SAME—*Suit to Compel Assignee to Settle Accounts Not Defeating Commissions:*

   Where the insolvent assignor and assignee agree that the former shall remain in possession and sell the property and apply the proceeds to the payment of his debts, and he does so remain in possession for a considerable time and sells a portion of the property, but does not apply all the proceeds on his debts, and, ascertaining that fact, the assignee obtains possession of the remaining property, sells it and satisfies the creditors out of the proceeds, the assignor can not, by bringing a suit to compel the assignee to settle his accounts before the expiration of six months after his sale, defeat his commissions. (p. 58).

Appeal from Circuit Court, Webster County.

Suit by Cora L. McElwain against William G. Woods, assignee, and others. Cause referred to a commissioner in chancery to report settlement of accounts of trustee, exceptions to report overruled, and report confirmed, except in one particular. Decree for W. G. Woods, assignee, and others, and plaintiff appeals. *Affirmed.*

*W. S. Wysong,* for appellant.
*W. T. Talbott,* for appellees.

Williams, Judge:

Cora L. McElwain, a married woman conducting a retail store at Fenwick, Nicholas County, became involved in debt and on the 18th of September, 1914, made an assignment of all her real and personal property, in which her husband W. D. McElwain joined, to William G. Woods, trustee, for the benefit of her creditors. The stock of merchandise and claims due her were estimated at about $3,200.00, and the debts owing by her at something over $1,750.00. The assignor thought her assets were amply sufficient to pay all her debts, and the real purpose of the assignment was to enable her to gain time and make payment by continuing to sell goods at retail in the ordinary way, and an oral understanding was had between her and the trustee at the time of the assignment, that she and her husband might remain in possession and continue to sell the goods as before and apply the proceeds to the liquidation of the debts; and in that event the trustee, who was her cousin, was to charge no commissions, nor was she or her husband to charge anything for their services.

The business was carried on under this arrangement for about thirteen months, within which time three inventories were taken of the stock of goods, one on the 23rd and 24th of September, 1914, showing $2,761.94; another on June 21st, 1915, showing $1,548.88; and the third on the 15th of October, 1915, showing the stock of goods then on hand to be worth only $1,305.58. Discovering about that time, as he swears, that the assignor was not applying all the proceeds of sales to the payment of the debts, the trustee demanded possession, and, being refused, procured a lock and key and locked the assignor and her husband out of the store-building and took possession on the 14th of October, 1915, and on the next day sold the stock of goods in bulk to Mrs. A. J. Goff at 75% of the invoice, less $37.00 discount on account of some damaged articles, realizing therefor $939.41. In the meantime and prior to June 21, 1915, when the second inventory was taken, the goods were moved by Mrs. McElwain and her husband from Fenwick to Cowen in

Webster County, where the trustee sold the remaining portion of the stock.

Prior to making the general assignment, to-wit, on the 15th day of August, 1914, Mrs. McElwain, her husband uniting in the deed, conveyed to the same trustee her house and lot in the village of Halo, Webster County, containing one-half acre, in trust to idemnify W. R. Woods and D. C. Hoover as her endorsers on a note for $450.00 payable to the First National Bank of Webster Springs in three months from the date of said deed, and likewise to indemnify W. R. Woods and Floyd McElwain as endorsers on her note for $250.00, bearing the same date and payable at the same time and place as the other. These notes were renewed once or twice and the balances due thereon were finally reduced to judgment and paid by the endorsers. Whereupon they gave notice to the trustee to sell the house and lot. On the 29th of December, 1915, the trustee advertised that he would sell it at public auction on the 29th of January, 1916. Cora L. McElwain then brought the present suit, on the 11th of January, 1916, praying that the trustee be enjoined from selling and that he be required to settle his accounts as trustee under the deed of general assignment of September 18, 1914, and for general relief. The trustee, W. D. McElwain, plaintiff's husband, and her creditors were made parties defendant to the bill. An injunction was granted as prayed for on the 26th of January, 1916, and the trustee gave notice that he would move to dissolve it. The motion was heard on the 10th of March, 1916, at a special term, upon the bill and exhibits, the demurrer, answer and cross-bill of the trustee filed in the clerk's office at the March rules, and upon the answers of some of the creditors, general replications thereto and upon affidavits, upon consideration whereof the motion to dissolve was overruled. On the 7th of October, 1916, the cause was referred to James Woodzell, a commissioner in chancery, to take, state and report a settlement of the accounts of said trustee with the said Cora L. McElwain and with her creditors. The commissioner filed his report on May 18, 1918, showing that the trustee had accounted for all the personal assets which had come into his hands, and had satisfied all the creditors except the endorsers on the two aforesaid notes, who were in-

demnified by the trust deed given by Cora L. McElwain and her husband on her house and lot in Halo, and that he had actually paid on the general debts $48.81 in excess of funds derived from the personal assets. The commissioner found that there was then due W. R. Woods, endorser on the aforesaid notes, a balance of $240.75 on the $450.00 note, and $154.87 on the $250.00 note, both as of the 28th of May, 1918, and that A. F. McElwain, one of the endorsers on the $250.00 note, had been overpaid by $7.07. He further found that the assignee was entitled to $250.00 as a reasonable compensation for his services, and also to an attorney fee of $50.00 paid to his attorney W. T. Talbott.

Plaintiff filed written exceptions to the report on the ground that it improperly allowed commissions to the trustee, because the trustee had made no settlement of his accounts until he was coerced to do so by this suit, and because the trustee had agreed to serve without compensation, because no appraisement of the assets had ever been made, and lastly because of the allowance of an attorney's fee of $50.00 paid by the trustee to W. T. Talbott.

A final decree was entered on the 3rd of June 1918, reducing the amount of commissions allowed by the commissioner to $75.00, overruling the other exceptions and confirming the report, and decreeing $240.75 to W. R. Woods and D. E. Hoover, $154.87 to W. R. Woods, balance due him on the smaller one of the aforesaid notes, and also decreeing to W. G. Woods, the trustee, $48.81 and $75.00 as compensation for his services, and decreeing said sums to be liens of equal dignity upon the house and lot, except the item of $75.00 for the trustee's compensation, which was decreed as part of the costs of the suit.

Cora L. McElwain is the only party complaining and she insists that the trustee is in default and not entitled to commissions: first, because he failed to have the assets appraised as provided by section 6a, chapter 72, Code; and second, because he failed to make a report of his receipts and disbursements to a commissioner of accounts as provided in the case of fiduciaries in chapter 87 of the Code. The commissioner's finding shows that plaintiff herself was responsible, in part at least, for the failure to have the property appraised. He reports that, by

agreement between the parties, the plaintiff and her husband
were left in possession of the goods for the purpose of selling
them and making application of the proceeds of sale to the pay-
ment of her debts. She did remain in possession until October
14, 1915, a period of thirteen months, before the trustee took pos-
session. The trustee had qualified by giving bond in the manner
required by statute on the 21st of September, 1914, but took pos-
session only after he learned that the assignor was not making
faithful application to her debts of all the money derived from
sales, as she had agreed to do. None of the creditors are com-
plaining, and she certainly can not be allowed to take advantage
of her own wrong. Having broken her own agreement, the
trustee was no longer bound not to demand commissions.

Section 6a, chapter 72, Code, requires a trustee of an insolvent
debtor assigning all his property for the benefit of his creditors,
to give bond before the clerk of the county court in a penalty
double the amount of the ascertained value of the estate, and to
take an oath that he will faithfully perform his duties as such
trustee to the best of his skill and judgment, and that he will
pay over all money that comes into his hands as such trustee.
This provision of the statute further provides in such case, that
appraisers shall be appointed to appraise the estate of the in-
solvent debtor, in the same manner and by the same authority as
appraisers for the estate of decedents are appointed, and that
they shall be governed by the same laws and perform the same
duties as appraisers of estates of decedents. This was not done in
this case for the reason above stated. The same statute also
provides in such case that the trustee shall appear before one of
the commissioners of accounts of the county court before which
he qualified as trustee and lay before him a report of his re-
ceipts and disbursements and his vouchers for the same, in all
respects and with like effect as is provided for fiduciaries general-
ly by chapter 87 of the Code. The trustee did not report an in-
ventory of the property sold and an account of the sale made by
him to the clerk of the county court, but it was not too late to
do so when this suit was brought. Section 3, chapter 87, Code,
provides that he shall have six months after making the sale
to make return thereof to the clerk's office, and provides that
failure to comply therewith shall forfeit his commissions.

Counsel for plaintiff insists that by his failure to comply with this provision of the statute the trustee has forfeited his commissions. A sufficient answer to this contention, we think, is that the time within which he could have made such return had not expired before plaintiff brought this suit. The trustee made his sale on the 15th of October, 1915, and had six months thereafter within which to return his inventory and account of sale to the clerk's office, and this suit was brought on the 11th of January, 1916, less than three months after the sale. Any settlement thereafter, had to be made in the suit.

It must be remembered that Cora L. McElwain, the insolvent debtor, is the only person here complaining; and, having brought her suit against the trustee before the expiration of the time allowed him for making a report of the sale to the county clerk's office, and thereby prevented him from doing so within time thereafter, she has no right to insist on a forfeiture of his commissions. We do not say what effect such failure would have upon the rights of creditors, it is enough to say none are here complaining.

It is insisted that the trustee prematurely took the deposition of witnesses before the cause had been referred to a commissioner to settle the trustee's accounts and thereby caused unnecessary costs, which the court erroneously decreed against the appellant. Depositions were not taken until after the trustee had filed his answer and cross-bill in the clerk's office at March rules. They were not prematurely taken, and the decree of reference directed the commissioner to read and consider them in making his report.

We find no error in the decree and it will be affirmed.

*Affirmed.*